**EXHIBIT 1**

## AMENDED AND RESTATED TERM NOTE

$2,400,000.00

October 28, 1996
District of Columbia

    In consideration of the term loan (the "Term Loan") made by CRESTAR BANK N.A., a national banking association (the "Lender"), to the undersigned corporations (the "Borrowers"), pursuant to the terms of the Credit Agreement, dated as of October 1, 1994, as amended as of May 31, 1995, October 30, 1995, May 31, 1996 and October 28, 1996 (as the same may be further amended, modified or supplemented from time to time, the "Credit Agreement") between the Lender, the Borrowers, and the guarantors named therein, and for value received, the Borrowers jointly and severally promise to pay to the order of the Lender, at the Lender's office located at 15th Street and New York Avenue, N.W., Washington, D.C., or at such other place as the Lender may designate in writing, in lawful money of the United States and immediately available funds, without defense, setoff or counterclaim, the principal amount of TWO MILLION FOUR HUNDRED THOUSAND and NO/100 DOLLARS ($2,400,000.00) or so much of this amount as may be advanced from time to time and remain outstanding, plus interest on this amount, on the terms and conditions set forth in this Note.

    From the date of this Note until this Note is paid in full, the unpaid principal balance of this Note from time to time outstanding shall bear interest at the applicable rate provided for in the Credit Agreement. This Note shall be payable in installments of combined principal and interest of $20,979.9¼ each, due on the first day of each month, beginning on November 1, 1996 and continuing on the same day of each succeeding month until October 1, 2003, when the entire unpaid principal balance hereof and all accrued and unpaid interest thereof shall be due and payable in full. The amount of each installment of combined principal and interest shall be determined, and is subject to being increased, in accordance with the provisions of the Credit Agreement. Interest shall be computed for the actual days elapsed over a year of 360 days. After maturity or in the event of default, interest shall continue to accrue at the applicable rate set forth in the Credit Agreement and shall be payable on demand of the Lender. The Borrowers agree to pay the Lender a late charge equal to five percent (5%) of the amount of any payment of principal or interest, or both, that is more than ten (10) days past due. Payments made under this Note shall be applied first to accrued interest and then to principal.

    The Borrowers may prepay this Note in whole or in part at any time, subject to the payment of any applicable prepayment premium set forth in the Credit Agreement. Partial

fx\bb\t:\crestar\eagle\amretmnt.1

prepayments shall not postpone the due dates of, or reduce the amounts of, scheduled installments due hereunder.

This Note is the Term Note referred to in the Credit Agreement. Terms defined in the Credit Agreement shall have the same defined meanings when such terms are used in this Note. Neither the reference to nor the provisions of the Credit Agreement, or any other agreement or document referred to in this Note or executed in connection with this Note, shall affect or impair the absolute and unconditional obligation of the Borrowers to repay the principal of and interest on this Note and any other sums due with this Note as provided in this Note.

Upon the occurrence of an Event of Default under the Credit Agreement, the entire unpaid amount of this Note shall become due and payable at the election of the Lender and without notice.

Each Borrower waives presentment, demand, protest and notice of dishonor and protest. Upon the occurrence of an Event of Default under the Credit Agreement, the Lender shall have the right to offset the amount owed by the Borrowers under this Note against any account, checking, savings or otherwise, which any Borrower may have with the Lender, or against any amounts owed by the Lender in any capacity to any Borrower, whether or not due. The Borrowers shall pay to the Lender, upon demand, all costs and expenses, including, without limitation, reasonable attorneys' fees and legal expenses, that may be incurred by the Lender in connection with the enforcement of this Note.

Each Borrower represents and warrants that this Note evidences a loan that is made for carrying on a business, professional or commercial activity.

Any failure by the Lender to exercise any right under this Note shall not be construed as a waiver of the right to exercise the same or any other right at any time. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, charge, modification or discharge is sought. No amendment to or modification of this Note shall be binding upon the Lender unless in writing and signed by it.

This Note shall apply to and bind the successors and assigns of the Borrowers and shall inure to the benefit of the Lender, its successors and assigns.

Any advance of the Term Loan shall be conclusively presumed to have been made to and for the benefit of and at the request of the Borrowers when: (a) deposited or credited to an account of any Borrower with the Lender, notwithstanding that such advance was requested, orally or in writing, by someone other than the person signing below or that someone other than the person signing below is authorized to draw on such account and may or does withdraw the whole or part of any such advance; or (b) made in accordance with oral

0096  0101   00001877

or written instructions of any Borrower or anyone signing below for or on behalf of any Borrower.

The Lender is authorized to maintain records of the date and amount of each advance of the Term Loan, the establishment of each applicable interest rate, and the date and amount of any payment of principal or interest and the principal balance then remaining unpaid on this Note. Each Borrower agrees that the amount so evidenced in such records shall, for all purposes, constitute prima facie evidence of this amount and shall be binding upon the Borrowers, absent manifest error.

All notices, demands or requests required or permitted under the terms of this Note to be given by or to the Borrowers or the Lender shall be given in accordance with the provisions of the Credit Agreement.

This Note shall be governed by and interpreted in accordance with the laws of the District of Columbia, without reference to conflict of laws principles.

This Note amends and restates in its entirety the $2,400,000 Term Note, dated October 30, 1995, made by the Borrowers and payable to the Lender.

Each Borrower has duly executed this Note as of the date first above written.

[SIGNATURES ON THE FOLLOWING PAGE]

PBD, INC.,
a District of Columbia corporation

By: *[signature]*
Richard W. Tynes
President


EAGLE MAINTENANCE & JANITORIAL
SERVICES, INC., a District of
Columbia corporation

By: *[signature]*
Richard W. Tynes
President


EAGLE MANAGEMENT ENVIRONMENTAL
SYSTEMS, INC.,
a Delaware corporation

By: *[signature]*
Richard W. Tynes
President


fx\bb\t:\crestar\eagle\amretmnt.1

0096 0101   00001879

# AMENDED AND RESTATED EQUIPMENT NOTE

$1,500,000.00

October 28, 1996
District of Columbia

    In consideration of the equipment loan (the "Equipment Loan") made by CRESTAR BANK N.A., a national banking association (the "Lender"), to the undersigned corporations (the "Borrowers"), pursuant to the terms of the Credit Agreement, dated as of October 1, 1994, as amended as of May 31, 1995, October 30, 1995, May 31, 1996 and October 28, 1996 (as the same may be further amended, modified or supplemented from time to time, the "Credit Agreement") between the Lender, the Borrowers, and the guarantors named therein, and for value received, the Borrowers jointly and severally promise to pay to the order of the Lender, at the Lender's office located at 15th Street and New York Avenue, N.W., Washington, D.C., or at such other place as the Lender may designate in writing, in lawful money of the United States and immediately available funds, without defense, setoff or counterclaim, the principal amount of ONE MILLION FIVE HUNDRED THOUSAND and NO/100 DOLLARS ($1,500,000.00) or so much of this amount as may be advanced from time to time and remain outstanding, plus interest on this amount, on the terms and conditions set forth in this Note.

    From the date of this Note until this Note is paid in full, the unpaid principal balance of this Note from time to time outstanding shall bear interest at the applicable rate provided for in the Credit Agreement. This Note shall be payable in installments of combined principal and interest of $18,678 each, due on the first day of each month, beginning on November 1, 1996, and continuing on the same day of each succeeding month until October 1, 2003, when the entire unpaid principal balance hereof and all accrued and unpaid interest thereof shall be due and payable in full. The amount of each installment of combined principal and interest has been determined, and is subject to being increased, in accordance with the provisions of the Credit Agreement. Interest shall be computed for the actual days elapsed over a year of 360 days. After maturity or in the event of default, interest shall continue to accrue at the applicable rate set forth in the Credit Agreement and shall be payable on demand of the Lender. The Borrowers agree to pay the Lender a late charge equal to five percent (5%) of the amount of any payment of principal or interest, or both, that is more than ten (10) days past due. Payments made under this Note shall be applied first to accrued interest and then to principal.

    The Borrowers may prepay this Note in whole or in part at any time, subject to the payment of any applicable prepayment premium set forth in the Credit Agreement. Partial

prepayments shall not postpone the due dates of, or reduce the amounts of, scheduled installments due hereunder.

This Note is the Equipment Note referred to in the Credit Agreement. Terms defined in the Credit Agreement shall have the same defined meanings when such terms are used in this Note. Neither the reference to nor the provisions of the Credit Agreement, or any other agreement or document referred to in this Note or executed in connection with this Note, shall affect or impair the absolute and unconditional obligation of the Borrowers to repay the principal of and interest on this Note and any other sums due with this Note as provided in this Note.

Upon the occurrence of an Event of Default under the Credit Agreement, the entire unpaid amount of this Note shall become due and payable at the election of the Lender and without notice.

Each Borrower waives presentment, demand, protest and notice of dishonor and protest. Upon the occurrence of an Event of Default under the Credit Agreement, the Lender shall have the right to offset the amount owed by the Borrowers under this Note against any account, checking, savings or otherwise, which any Borrower may have with the Lender, or against any amounts owed by the Lender in any capacity to any Borrower, whether or not due. The Borrowers shall pay to the Lender, upon demand, all costs and expenses, including, without limitation, reasonable attorneys' fees and legal expenses, that may be incurred by the Lender in connection with the enforcement of this Note.

Each Borrower represents and warrants that this Note evidences a loan that is made for carrying on a business, professional or commercial activity.

Any failure by the Lender to exercise any right under this Note shall not be construed as a waiver of the right to exercise the same or any other right at any time. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, charge, modification or discharge is sought. No amendment to or modification of this Note shall be binding upon the Lender unless in writing and signed by it.

This Note shall apply to and bind the successors and assigns of the Borrowers and shall inure to the benefit of the Lender, its successors and assigns.

Any advance of the Equipment Loan shall be conclusively presumed to have been made to and for the benefit of and at the request of the Borrowers when: (a) deposited or credited to an account of any Borrower with the Lender, notwithstanding that such advance was requested, orally or in writing, by someone other than the person signing below or that someone other than the person signing below is authorized to draw on such account and may or does withdraw the whole or part of any such advance; or (b) made in accordance with oral

or written instructions of any Borrower or anyone signing below for or on behalf of any Borrower.

The Lender is authorized to maintain records of the date and amount of each advance of the Equipment Loan, the establishment of each applicable interest rate, and the date and amount of any payment of principal or interest and the principal balance then remaining unpaid on this Note. Each Borrower agrees that the amount so evidenced in such records shall, for all purposes, constitute prima facie evidence of this amount and shall be binding upon the Borrowers, absent manifest error.

All notices, demands or requests required or permitted under the terms of this Note to be given by or to the Borrowers or the Lender shall be given in accordance with the provisions of the Credit Agreement.

This Note shall be governed by and interpreted in accordance with the laws of the District of Columbia, without reference to conflict of laws principles.

This Note amends and restates in its entirety the $1,500,000 Equipment Note, dated October 30, 1995, made by the Borrowers and payable to the Lender.

Each Borrower has duly executed this Note as of the date first above written.

[SIGNATURES ON THE FOLLOWING PAGE]

PBD, INC.,
a District of Columbia corporation

By: _____
Richard W. Tynes
President


EAGLE MAINTENANCE & JANITORIAL
SERVICES, INC., a District of
Columbia corporation

By: _____
Richard W. Tynes
President


EAGLE MANAGEMENT ENVIRONMENTAL
SYSTEMS, INC.,
a Delaware corporation

By: _____
Richard W. Tynes
President


fx\bb\t:\crestar\eagle\amreeqnt.1

0096 0101  00001945

# AMENDED AND RESTATED LINE NOTE

$1,500,000.00

October 28, 1996
District of Columbia

In consideration of a line of credit (the "Line") established by CRESTAR BANK N.A., a national banking association (the "Lender"), in favor of the undersigned corporations (the "Borrowers"), pursuant to the terms of the Credit Agreement dated as of October 1, 1994, as amended on May 31, 1995, October 30, 1995, May 31, 1996 and October 28, 1996 (as the same may be further amended, modified or supplemented from time to time, the "Credit Agreement") between the Lender, the Borrowers, and the guarantors named therein, and for value received, the Borrowers jointly and severally promise to pay to the order of the Lender, at the Lender's office located at 15th Street and New York Avenue, N.W., Washington, D.C., or at such other place as the Lender may designate in writing, in lawful money of the United States and immediately available funds, without defense, setoff or counterclaim, the principal amount of ONE MILLION FIVE HUNDRED THOUSAND and NO/100 DOLLARS ($1,500,000.00) or so much of this amount as may be advanced or readvanced from time to time and remain outstanding, plus interest on this amount, on the terms and conditions set forth in this Note.

The Borrowers may obtain advances of the Line and repay such advances from time to time, all in accordance with the provisions of the Credit Agreement. The principal of this Note shall be repaid on demand, or if demand is not sooner made, the Termination Date, as such term is defined in the Credit Agreement.

From the date of this Note until this Note is paid in full, the unpaid principal balance of this Note from time to time outstanding shall bear interest at the applicable rate provided for in the Credit Agreement. Accrued interest shall be payable monthly in arrears on the first day of each month, beginning on November 1, 1996. Interest shall be computed for the actual days elapsed over a year of 360 days. After maturity or in the event of default, interest shall continue to accrue at the applicable rate set forth in the Credit Agreement and shall be payable on demand of the Lender. The Borrowers agree to pay the Lender a late charge equal to five percent (5%) of the amount of any payment of principal or interest, or both, that is more than ten (10) days past due. Payments made under this Note shall be applied first to accrued interest and then to principal.

The Borrowers may prepay this Note in whole or in part at any time without premium or penalty.

fx\bb\t:\crestar\eagle\amreline.1

This Note is the Line Note referred to in the Credit Agreement. Terms defined in the Credit Agreement shall have the same defined meanings when such terms are used in this Note. Neither the reference to nor the provisions of the Credit Agreement, or any other agreement or document referred to in this Note or executed in connection with this Note, shall affect or impair the absolute and unconditional obligation of the Borrowers to repay the principal of and interest on this Note and any other sums due with this Note as provided in this Note.

Upon the occurrence of an Event of Default under the Credit Agreement, the entire unpaid amount of this Note shall become due and payable at the election of the Lender and without notice.

Each Borrower waives presentment, demand, protest and notice of dishonor and protest. Upon the occurrence of an Event of Default under the Credit Agreement, the Lender shall have the right to offset the amount owed by the Borrowers under this Note against any account, checking, savings or otherwise, which any Borrower may have with the Lender, or against any amounts owed by the Lender in any capacity to any Borrower, whether or not due. The Borrowers shall pay to the Lender, upon demand, all costs and expenses, including, without limitation, reasonable attorneys' fees and legal expenses, that may be incurred by the Lender in connection with the enforcement of this Note.

Each Borrower represents and warrants that this Note evidences a loan that is made for carrying on a business, professional or commercial activity.

Any failure by the Lender to exercise any right under this Note shall not be construed as a waiver of the right to exercise the same or any other right at any time. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, charge, modification or discharge is sought. No amendment to or modification of this Note shall be binding upon the Lender unless in writing and signed by it.

This Note shall apply to and bind the successors and assigns of the Borrowers and shall inure to the benefit of the Lender, its successors and assigns.

Any advance of the Line shall be conclusively presumed to have been made to and for the benefit of and at the request of the Borrowers when: (a) deposited or credited to an account of any Borrower with the Lender, notwithstanding that such advance was requested, orally or in writing, by someone other than the person signing below or that someone other than the person signing below is authorized to draw on such account and may or does withdraw the whole or part of any such advance; or (b) made in accordance with oral or written instructions of any Borrower or anyone signing below for or on behalf of any Borrower.

The Lender is authorized to maintain records of the date and amount of each advance of the Line, the establishment of each applicable interest rate, and the date and amount of any payment of principal or interest and the principal balance then remaining unpaid on this Note. Each Borrower agrees that the amount so evidenced in such records shall, for all purposes, constitute prima facie evidence of this amount and shall be binding upon the Borrowers, absent manifest error.

All notices, demands or requests required or permitted under the terms of this Note to be given by or to the Borrowers or the Lender shall be given in accordance with the provisions of the Credit Agreement.

This Note shall be governed by and interpreted in accordance with the laws of the District of Columbia, without reference to conflict of laws principles.

The Borrowers acknowledge and agree that all advances under the Line are payable on demand and that the enumerated Events of Default set forth below are merely examples of the types of occurrences that may cause the Bank to make a demand for payment, and neither they nor any other provision in this Agreement or in the Line Note shall limit the Bank's right to demand payment whenever it chooses.

This Note amends and restates in its entirety the $1,500,000 Line Note, dated October 1, 1994, made by the Borrowers and payable to the Lender.

Each Borrower has duly executed this Note as of the date first above written.

[SIGNATURES ON THE FOLLOWING PAGE]

PBD, INC.,
a District of Columbia corporation

By: _____
Richard W. Tynes
President


EAGLE MAINTENANCE & JANITORIAL
SERVICES, INC., a District of
Columbia corporation

By: _____
Richard W. Tynes
President


EAGLE MANAGEMENT ENVIRONMENTAL
SYSTEMS, INC., a Delaware corporation

By: _____
Richard W. Tynes
President