**EXHIBIT 2**

## GUARANTY

In consideration of loans, advances or other credit heretofore or hereafter made or extended by CRESTAR BANK N.A. (the Lender), to PBD, INC., EAGLE MAINTENANCE & JANITORIAL SERVICES, INC., each a District of Columbia corporation, and EAGLE MANAGEMENT ENVIRONMENTAL SYSTEMS, INC., a Delaware corporation (collectively, the Borrowers, and individually, a Borrower), and to enable such loans, advances or other credit to be maintained or obtained by the Borrowers, and to induce the Lender to extend credit to the Borrowers, the undersigned, jointly and severally, hereby guarantee to the Lender the full and prompt payment when due, whether by acceleration or otherwise, of all Debt (as defined below) of the Borrowers to the Lender, subject to the limitations set forth in Paragraph 10 hereof. The word "Debt," as used in this Guaranty, shall mean all obligations, indebtedness and liabilities of each Borrower to the Lender, now existing or hereafter arising, of every kind and description, whether or not evidenced by notes or other instruments, and whether such obligations, indebtedness and liabilities are direct or indirect, fixed or contingent, liquidated or unliquidated, due or to become due, secured or unsecured, joint, several or joint and several, evidenced by, arising out of or related to the Credit Agreement, the Notes, the Loan Documents or the Loans (as such terms are defined in the Credit Agreement between the Borrowers, the undersigned and the Lender, dated as of October 1, 1994 (as amended, modified or supplemented from time to time, the Credit Agreement), including, without limitation, all principal and interest, charges, costs of collection, attorneys' fees and expenses and other expenses of the Lender that any Borrower is obligated to pay under the Loan Documents, amounts advanced by the Lender in discharge of obligations of any Borrower, any overdrafts in any deposit account maintained by any Borrower with the Lender, and all obligations of any Borrower with respect to letters of credit issued by the Lender for the account of such Borrower, whether such amounts are from time to time reduced, thereafter increased or entirely extinguished and thereafter reincurred. The undersigned further acknowledge and agree that this Guaranty is made upon and subject to the following terms and conditions:

1.      This Guaranty is a guaranty of payment and not merely a guaranty of collection. If any Debt is not satisfied when due, the undersigned shall forthwith satisfy such Debt or, at the option of the Lender, all Debt of the Borrowers, upon demand, and no such satisfaction shall discharge the obligations of the undersigned hereunder until all Debt has been satisfied in full. The Lender may collect such Debt, or any part thereof, from the undersigned, or either of them, without first exercising its rights against the Borrowers or any collateral, and the undersigned waive any right to require the Lender to pursue the Borrowers or any collateral before enforcing the obligations of the undersigned hereunder. Until all of the Debt has been paid in full, the undersigned shall not be subrogated to any of

the Lender's rights against the Borrowers or any collateral, and any funds or other property at any time received by the undersigned from any Borrower in respect of the Debt guaranteed hereby shall be held in trust for and shall be paid or transferred to the Lender upon demand therefor. The undersigned shall not be entitled to exercise any right of reimbursement, indemnity, contribution or other recourse against any Borrower or any other surety or guarantor of the Debt until the obligations of such surety or guarantor in respect of the Debt have been paid in full. Notwithstanding any provision to the contrary in this Guaranty, each of the undersigned hereby waives any rights he or she may have (a) to be subrogated to any rights of the Lender against any Borrower, any other guarantor or surety of the Debt, or any security for the Debt, or (b) of reimbursement, contribution or indemnification against any Borrower or against any other guarantor or surety of the Debt arising from payments made to the Lender with respect to any of the Debt, to the extent that any of such aforesaid rights may be exercised or asserted in any proceeding or case commenced by or against any Borrower or any other guarantor or surety of the Debt under the Federal bankruptcy laws as now or hereafter constituted.

2.    Each of the undersigned hereby (a) waives notice of presentment, demand, notice of nonpayment, protest and notice of protest as to the Debt and any other demands and notices required by law; (b) consents to the provisions of all agreements heretofore or hereafter made with the Lender by the Borrowers; (c) consents and agrees that the Lender may (1) exchange, release or surrender to any Borrower any collateral or waive, release or subordinate any security interest, in whole or in part, now or hereafter held as security for any Debt, (2) waive or delay the exercise of any rights or remedies against any Borrower or any surety or guarantor, or any collateral for any Debt, (3) release or enter into compromises with any Borrower, or any surety or guarantor of the Debt, (4) renew, extend, increase, waive or modify the terms of any Debt or any instrument or agreement evidencing the same, and (5) apply payments by any Borrower or the undersigned to any Debt; and (d) waives all notices whatsoever with respect to this Guaranty or with respect to the Debt, including, without limitation, notice of (1) the Lender's acceptance hereof and its intention to act or its action in reliance hereon, (2) the present existence or future incurrence of any Debt or any terms or amounts thereof or of any change therein, (3) any default by any Borrower or by any surety or guarantor with respect to any of the Debt, (4) the obtaining of any guaranty or surety agreement (in addition to this Guaranty), pledge, assignment or other security for any Debt, and (5) the release of any guarantor or surety of any Debt or of any pledgor or assignor whose pledge or assignment has been given as security for any Debt; and (e) waives any and all defenses of any Borrower to the Debt and any claim of offset or counterclaim by any Borrower or loss of contribution from any co-guarantor with respect thereto.

3.    The obligations of the undersigned hereunder are absolute, primary and unconditional, without regard to the obligations of any other party or person, and shall be effective regardless of the solvency or insolvency of any Borrower at any time or the extension or modification of the Debt by operation of law or otherwise and shall not in any manner be affected by reason of any action taken or not taken by the Lender, which action or inaction is hereby consented and agreed to, or of any lack of prior enforcement or retention

fx\bb\i:\crestar\eagle\guar.2

of any rights against any Borrower, the undersigned or any other person or any property, or of the partial or complete unenforceability or invalidity of any other guaranty or surety agreement, pledge, assignment or other security for any Debt or of the value, genuineness, validity, regularity or enforceability of any of the Debt. The Lender may release all or any part of the obligations of any other surety or guarantor of any Debt, and any such release shall not affect or release any obligation hereunder of the undersigned. No delay in making demand on the undersigned for satisfaction of the obligations of the undersigned hereunder shall prejudice the Lender's right to enforce such obligations. All of the Lender's rights and remedies shall be cumulative, and any failure of the Lender to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time thereafter.

4.    The undersigned assume the responsibility for being and keeping informed of the financial condition of the Borrowers and of all other circumstances bearing upon the risk of nonpayment and nonperformance of the Debt; and, absent written request for such information by the undersigned, the Lender shall have no duty to advise the undersigned of information known to the Lender regarding such condition or any such circumstances.

5.    Each of the undersigned hereby subordinates to the Debt all indebtedness of any Borrower owing to the undersigned or to either of them, whether now existing or hereafter arising. The liability of the undersigned hereunder shall be reinstated and revived and the rights of the Lender shall continue if, and to the extent that, for any reason any payment by or on behalf of any Borrower, the undersigned, or either of them is rescinded or must be otherwise restored by the Lender, whether as a result of any proceedings in bankruptcy or reorganization or otherwise; provided, however, that if the Lender chooses to contest any such matter, the undersigned agree to indemnify and hold the Lender harmless with respect to all costs (including, without limitation, reasonable attorneys' fees and expenses actually incurred) of such litigation.

6.    This Guaranty shall be a continuing guaranty and shall be binding upon the undersigned regardless of how long before or after the date hereof any Debt was or is incurred; provided, however, that the undersigned or either of them may terminate this Guaranty as to such guarantor by written notice sent to the Lender by certified or registered mail stating an effective date of termination not less than 30 days after receipt of such notice by the Lender, and the party giving such notice shall not be obligated to the Lender with respect to any Debt incurred after the permitted effective date of termination stated in such notice. Notwithstanding the foregoing, this Guaranty shall continue as to each of the undersigned who has not given such notice and also shall continue as to each of the undersigned who has given such notice with respect to (a) any Debt that was incurred prior to such date of termination or that is thereafter incurred in renewal, extension or modification of any such Debt, and (b) any Debt incurred after such date of termination pursuant to an agreement theretofore entered into that bound the Lender to permit such Debt to be incurred. In the event this Guaranty is preceded or followed by any other agreement of guaranty or suretyship by the undersigned or others, all such agreements shall be deemed to be

fx\bb\t:\crestar\eagle\guar.2

cumulative and the obligations of the undersigned hereunder shall be in addition to those stated in any other guaranty or suretyship agreement.

7.    All obligations of the undersigned under this Guaranty shall mature, at the option of the Lender, immediately upon the   occurrence of any Event of Default under the Credit Agreement.

8.    The undersigned agree to pay all costs and expenses incurred in enforcing the Debt or the obligations of the undersigned under this Guaranty, including, without limitation, reasonable attorneys' fees and expenses actually incurred, in the event this Guaranty is placed in the hands of an attorney for collection, or the Lender finds it necessary or desirable to secure the services or advice of an attorney with regard to the collection of the Debt or the obligations of the undersigned under this Guaranty.  The undersigned waive, to the maximum extent permitted by law, the benefit of the homestead exemption and all other exemption or insolvency laws that may relate to this Guaranty or to the undersigned.  The books and records of the Lender showing the accounts between the Lender and the Borrowers shall be admissible in evidence in any action or proceeding thereon as prima facie proof of the items set forth therein.  The undersigned agree that payment or performance of any of the Debt or other acts that shall toll any statute of limitations applicable to the Debt also shall toll the statute of limitations applicable to the liability of the undersigned under this Guaranty.  No setoff, claim, counterclaim, reduction or diminution of any obligation or defense of any kind or nature that either of the undersigned has or may have against the Lender (other than the defense of payment) shall be available against the Lender in any action, suit or proceeding brought by the Lender to enforce this Guaranty.  The foregoing shall not be construed as a waiver by any of the undersigned of any such rights or claims against the Lender, but any recovery upon any such rights or claims shall be had from the Lender separately, it being the intent of this Guaranty that each of the undersigned shall be obligated to pay, absolutely and unconditionally, all amounts due under this Guaranty.

9.    All notices, requests, demands or other communications provided for in this Guaranty shall be in writing and shall be delivered by hand, sent prepaid by Federal Express (or a comparable overnight delivery service) or sent by the United States mail, certified, postage prepaid, return receipt requested, to the Lender or the undersigned at their respective addresses set forth in the Credit Agreement.  Any notice, request, demand or other communication delivered or sent in the foregoing manner shall be deemed given or made (as the case may be) upon the earliest of (a) the date it is actually received, (b) the business day after the day on which it is delivered by hand, (c) the business day after the day on which it is properly delivered to Federal Express (or a comparable overnight delivery service), or (d) the third business day after the day on which it is deposited in the United States mail.  The parties hereto may change their respective addresses by notifying the other party of such new address in any manner permitted by this Paragraph 9.  Rejection or other refusal to accept or the inability to deliver because of a changed address of which no notice was given shall not affect the date of such notice, election or demand sent as aforesaid.

fx\bb\t:\crestar\eagle\guar.2

10.    The liability of the undersigned under this Guaranty shall not exceed an amount equal to $2,500,000 of principal owing on the Debt plus interest thereon at the rate being charged on the Debt, plus all costs of collection and attorneys' fees. The obligation of the undersigned to pay up to such limit shall continue without regard to the amount of Debt incurred by the Borrowers (which may exceed such limit) or to amounts repaid by or for the account of the Borrower.

11.    Upon the occurrence of an Event of Default under the Credit Agreement, the Lender shall have the right to setoff, at any time without notice to the undersigned, any and all deposits or other sums at any time or times credited by or due from the Lender to the undersigned (whether or not matured) against the obligations of the undersigned hereunder.

12.    This Guaranty has been delivered to the Lender in the District of Columbia and shall be construed and enforced in accordance with the laws of such jurisdiction, without regard to its rules with respect to choice of law. No provisions of this Guaranty may be modified, deleted or amended in any manner except by an agreement in writing executed by the parties, and this Guaranty shall be binding upon the undersigned and the heirs, personal representatives and assigns thereof, and shall inure to the benefit of and be enforceable by the Lender and its successors and assigns. If any term or provision of this Guaranty shall be invalid or unenforceable to any extent, the remainder of this Guaranty shall not be affected thereby.

WITNESS the following signatures and seals as of the first day of October, 1994.

WITNESS:                                SIGNATURES OF GUARANTORS:

_____        _____ (SEAL)
                                                   RICHARD W. TYNES

_____        _____ (SEAL)
                                                   GAIL F. TYNES

fx\bb\t:\crestar\eagle\guar.2